## ELLIOTT *v.* THE STATE.

1. The admission of irrelevant testimony will not generally warrant the granting of a new trial, unless it appears that the evidence was calculated to injuriously affect the complaining party; especially is this true when the evidence is not material and not calculated to mislead the jury.

2. The evidence relied upon by the State to establish the fact of the homicide not disclosing any circumstances of mitigation or justification, it was not error for the court to charge, that, "when a killing is proven to be the act of the defendant, the presumption of innocence with which he enters upon the trial is removed from him, and the burden is then upon him to justify or mitigate the homicide."

3. One ground of the motion for a new trial charges that one of the jurors trying the case was disqualified, because he was "biased and prejudiced" against the prisoner at the time of the trial; this charge being based upon certain expressions alleged to have been used by him in a conversation which took place subsequently to the killing and prior to the trial. The use of the expressions was testified to in the affidavit of two persons. The juror made affidavit denying the use of the expressions alleged to have been made by him. *Held,* that the affidavit tending to show disqualification and submitted for that purpose, and the counter-affidavit of the juror, submitted by the State, formed an issue for determination by the trial judge, and his decision of the question thus made will not be disturbed by this court.

4. There was evidence to support the verdict; and that verdict having received the sanction of the trial judge, this court will not disturb the judgment refusing a new trial, no error of law being made to appear in the record.

Argued January 18,—Decided June 19, 1909.

Indictment for murder. Before Judge Freeman. Troup superior court. December 15, 1908.

*W. D. McNeil* and *M. U. Mooty,* for plaintiff in error.

*John C. Hart, attorney-general, J. R. Terrell, solicitor-general,* and *Hatton Lovejoy,* contra.

BECK, J. The plaintiff in error was indicted in Troup county for the offense of murder. Upon the trial of the case a verdict of guilty was rendered. A motion for a new trial was filed, and upon the hearing it was overruled. To the judgment overruling the motion the plaintiff in error excepted.

1. The motion for a new trial contains four grounds in addition to the general grounds set forth in the motion as originally filed. The first two of the grounds contained in the amendment to the motion relate to the admission in evidence, over objection of the prisoner's counsel, of certain testimony which was objected to on the ground that the testimony was "thoroughly immaterial." So far as can be judged from the grounds themselves, the testimony was, as contended by counsel, "thoroughly immaterial." Nothing is shown in either of these grounds as to any issue which would be affected by the evidence complained of, injuriously to the plaintiff in error. Counsel for the movant in framing these grounds contented themselves with merely setting out this immaterial testimony, and did not undertake to state any issue involved in the case which was or could be affected by the testimony in such a manner as to harm the accused. "The superior courts may grant new trials in all cases when any material evidence may be illegally admitted to, or illegally withheld from the jury against the demand of the applicant." Penal Code, § 1059. The admission of irrelevant testimony will not generally work the granting of a new trial, where it does not appear that the evidence was calculated to injuriously affect the complaining party; especially is this true when the evidence is not material, and not calculated to mislead the jury. *Mayor etc. of Gainesville* v. *Caldwell,* 81 *Ga.* 76 (7 S. E. 99) ; *Chestnut* v. *State,* 112 *Ga.* 366 (37 S. E. 384).

2. The judge charged the jury as follows: "When a killing is proven to be the act of the defendant, the presumption of innocence with which he enters upon his trial is removed from him, and the burden is then upon him to justify or mitigate the homicide." It is contended that this charge states "an incorrect propo-

sition of law, for that the burden never shifts in a criminal trial." The criticism upon the charge contains within itself an incorrect proposition of law. "If the proof that shows the killing discloses that it was done without malice, of course the presumption does not exist; but if the accompanying proof does not, then the burden is thrown upon the defendant to show that it was done without malice." *Vann* v. *State,* 83 *Ga.* 44 (9 S. E. 945). See also the case of *Mann* v. *State,* 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934), where the question raised in this ground of the motion for a new trial is fully discussed. In the instant case there was clear and uncontroverted evidence establishing the fact of the commission of the homicide alleged, and the evidence proving the homicide discloses no circumstance of mitigation or justification. Consequently the question which arose in the case of *Green* v. *State,* 124 *Ga.* 343 (52 S. E. 431), where a charge similar to the one here complained of was held to be error under the facts and circumstances of that case, does not arise. The distinction between cases in which the proof of a homicide is accompanied by circumstances of mitigation or justification and those cases in which there is proof of the homicide unaccompanied by circumstances that mitigate, excuse, or justify, with reference to the giving of instruction touching the shifting of the burden of proof, is clearly drawn in the case of *Mann* v. *State,* supra.

3. Another ground of the motion for a new trial was based upon the alleged disqualification of J. T. Pearson, a member of the jury which rendered the verdict complained of; and it is alleged that this juror "was biased and prejudiced against the defendant." Affidavits of the plaintiff in error and of his counsel showing that the fact of the alleged disqualification of the juror was unknown to movant and his counsel, and that it could not have been known to them in the exercise of ordinary care and diligence, were duly filed and submitted in connection with the hearing of the motion. To establish the alleged disqualification of the juror counsel submitted the affidavit of J. A. Allen and J. D. Rhodes. In this affidavit the affiants depose that the juror referred to took part in a conversation, on the night of the homicide, relative to the probability of the lynching of the prisoner, J. M. Elliott, and that the juror said, in substance, "I am willing to do my part towards taking him out of jail and lynching him. I also

speak the sentiments of Tony Walker, but Tony Walker doesn't want his name mentioned in it. If the rest of you will go, I will do my part." The State submitted on the hearing the affidavit of the juror attacked, in which he deposed: "Deponent and J. A. Allen and J. D. Rhodes had a conversation in front of and near the store of deponent and the said J. D. Rhodes. The said J. D. Rhodes was drunk, and the said J. A. Allen was drinking. The said Rhodes and Allen were discussing the lynching of J. M. Elliott, defendant in above case. Said Rhodes and Allen were urging and talking about getting up a mob for this purpose. Deponent said little in the conversation, and did not say to them, neither has deponent said to any one else at that time nor at any other time, that he would lynch the said J. M. Elliott. Deponent would not have joined the said Rhodes and Allen in the lynching of the said Elliott, and deponent left the said Rhodes and Allen because of the condition that they were in and of what they were saying. Deponent went into the trial of the said Elliott without prejudice against the said Elliott, and decided the case of said Elliott without bias or prejudice toward the State or the said Elliott." Fairly construed, we are of the opinion that the affidavit by the juror, submitted for the consideration of the trial judge on the hearing of the motion for a new trial, was a denial of the remarks attributed to him in the affidavit read to impeach his fairness and freedom from bias and prejudice. It is true that in the affidavit by which it is sought to establish the disqualification of the juror it is charged that the juror "in substance said, 'I am willing to do my part towards taking him out of jail and lynching him,'" and in the counter-affidavit the juror under investigation denied saying in the conversation referred to, or at any other time, "that he would lynch the said J. M. Elliott." While the expression charged against the juror and the expression denied by him are not identical in words, in substance they are the same. The charge and the denial therefore made an issue for the decision of the trial judge, and his decision of that question is final. It was a matter within his discretion, and this court will not interfere with the decision rendered by him.

4. The defense relied upon in this case was that the accused, at the time of the commission of the homicide and prior thereto, was of unsound mind, and that the diseased condition of his mind

had assumed the form of "delusional insanity;" and that although he committed the homicide charged, no criminal responsibility attached to him for the act. The question made by the defense urged was fully, fairly, and clearly stated to the jury in the able charge of the trial judge. There was strong evidence to support the contention of counsel for the accused, but there was also evidence which made it a question to be determined by the jury as to whether or not the defendant was of sound mind and therefore responsible for his acts at the time of the homicide. Upon that issue the verdict of the jury was against the defendant; and there being evidence to support the finding, and the verdict having been sanctioned by the trial judge, it will not here be set aside on the ground that it was contrary to the law and the evidence.

*Judgment affirmed. All the Justices concur.*